# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-CR-507 (PLF)** |
| | : | |
| **STEPHANIE BAEZ,** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' MOTION IN LIMINE TO PRECLUDE
## IMPROPER DEFENSE ARGUMENTS AND EVIDENCE

The United States of America moves *in limine*, pursuant to Fed. R. Evid. 401, 403, and 611(b), to preclude the defendant, from introducing evidence or making arguments:

(1) On the specific location of security cameras in the U.S. Capitol;

(2) On specific Secret Service tactics and emergency operations;

(3) That her conduct was authorized by former President Trump or other officers or officials;

(4) That any inaction by law enforcement permitted her conduct;

(5) That the First Amendment permitted her conduct;

(6) Encouraging jury nullification;

(7) That she defended herself or others on January 6, 2021;

(8) On her prior good acts or culpability relative to other actors on January 6, 2021; and/or

(9) On the actions of other rioters or their charges and dispositions.

## I.    LEGAL BACKGROUND

Motions *in limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Graves v. District of Columbia*, 850 F.Supp.2d 6, 10 (D.D.C.

2011) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)). The government details nine issues below to prepare this case for an efficient trial.

It is well-established that a district court has the discretion to limit a criminal defendant's presentation of evidence and cross-examination of witnesses. *See Alford v. United States,* 282 U.S. 687 (1931) ("The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."); *United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses."). A court has the discretion, for example, to prohibit cross-examination that goes beyond matters testified to on direct examination. Fed. R. Evid. 611(b). This is particularly so when the information at issue is of a sensitive nature. *See e.g., United States v. Balistreri,* 779 F.2d 1191, 1216-17 (7th Cir. 1985) (upholding district court's decision to prohibit cross-examination of agent about sensitive information about which the agent did not testify on direct examination and that did not pertain to the charges in the case), *overruled on other grounds* by *Fowler v. Butts,* 829 F.3d 788 (7th Cir. 2016). Other permissible reasons for limiting cross-examination include preventing harassment, prejudice, confusion of the issues, or repetitive, cumulative, or marginally relevant questioning. *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986).

While limiting the defendant's opportunity for cross-examination may implicate the constitutional right to confront witnesses, the Confrontation Clause only guarantees "an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). Even evidence that may be relevant to an affirmative defense should be excluded until a

defendant sufficiently establishes that defense through affirmative evidence presented during her own case-in-chief. *See United States v. Lin,* 101 F.3d 760, 768 (D.C. Cir. 1996) (acknowledging trial court has discretion to limit cross-examination on prejudicial matters without reasonable grounding in fact); *United States v. Sampol,* 636 F.2d 621, 663-64 (D.C. Cir. 1980) (holding that trial court properly limited cross-examination of alleged CIA murder scheme until defense put forth sufficient evidence of the affirmative defense in its case-in-chief); *United States v. Stamp,* 458 F.2d 759, 773 (D.C. Cir. 1971) (finding trial court properly excluded cross examination of government's witness with response to matter only related to an affirmative defense and not elicited through direct examination).

None of the nine topics below constitute proper topics for the defendant's case, cross-examination, or argument. Preventing the defendant from exploring these topics will not infringe her Confrontation Clause right because, as explained below, such topics have little probative value, and the defendant has more direct ways of making her case.

## II.     ARGUMENT

### A.     *Topic #1:* This Court Should Preclude the Defendant from Seeking Testimony on the Location of Specific Surveillance Cameras

The Court should restrict the defendant from presenting evidence or seeking to elicit testimony regarding the specific position of U.S. Capitol Police ("USCP") surveillance cameras. To meet its burden of proof at trial, the government will present video evidence from a variety of sources, including USCP surveillance footage. The USCP maintain an extensive closed-circuit video system that includes cameras inside the Capitol building, inside other buildings within the Capitol complex, and outside on Capitol grounds. These cameras captured thousands of hours of footage from the breach of the Capitol and have been instrumental in documenting the events of January 6, 2021.

However, the USCP surveillance system also serves an important, and ongoing, function in protecting Congress and, by extension, national security. In particular, the footage from the system is subject to limitations and controls on access and dissemination. To find relevant footage from the USCP's surveillance system and adequately prepare for trial, one would need to use maps that display the locations of the interior and exterior cameras. The government has therefore provided the defense with maps that display these locations. Due to the sensitive nature of these items, the government seeks an order limiting the defense from probing, during cross-examination, the exact locations of USCP surveillance cameras or from using the maps, which show each camera's physical location, as an exhibit at trial.

The Court should preclude the defendant from questioning witnesses about the exact positions of USCP cameras, introducing such evidence, or admitting USCP maps of camera coverage. Evidence about the exact locations of cameras, and the maps used to locate the cameras, should be excluded considering the ongoing security needs of the Capitol. The defense can probe what USCP cameras *show*, and what they don't, by asking about the general location of each camera. For example, a camera positioned inside the Lower West Terrace tunnel can be described as "inside the tunnel, facing out" without describing its exact height and depth within the tunnel and without showing a picture of the camera. Absent some concrete and specific defense need to probe the camera's location, there is nothing to be gained from such questioning. A general description, and the footage from the camera itself, will make clear what the camera recorded and what it did not. Additionally, presenting the map of all USCP cameras would risk compromising these security concerns for no additional probative value—the map contains numerous cameras installed in parts of the Capitol that the defendant did not visit.

In any event, any relevance of this evidence is substantially outweighed by the danger to national security. *See United States v. Mohammed,* 410 F. Supp. 2d 913, 918 (S.D. Cal. 2005) (finding that information having broader national security concerns can be excluded under Rule 403 because its tendency to confuse the issues, mislead the jury, create side issues or a mini-trial and can result in undue prejudice that substantially outweighs any probative value). If the map of the Capitol cameras is introduced in this trial, or in any trial, it becomes available to the public. Immediately, anyone could learn about the Capitol Police's camera coverage as of January 6, 2021, and—importantly—could learn about the parts of the Capitol where cameras were not installed. Broader presentation of evidence about camera locations could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or bias of witnesses. *Id.* As such, this evidence ought to be prohibited at trial.

**B.** *Topic #2:* **The Court Should Preclude Examination about Specific Secret Service Tactics and Emergency Operations**

The Court should limit the defendant's cross-examination of any United States Secret Service ("Secret Service") witnesses on their specific tactics and emergency operations. Among other crimes, the defendant is charged with violating 18 U.S.C. §§ 1752(a)(1) and (2) by knowingly entering or remaining in a restricted building or grounds without lawful authority and engaging in disorderly or disruptive conduct while in that restricted area. Section 1752 defines "restricted buildings or grounds" to include any building or grounds temporarily visited by a person being protected by the Secret Service. 18 U.S.C. § 1752(c)(1)(B). To meet its burden of proof at trial, the government will call a witness from the Secret Service to testify that, at the time of the Capitol breach, Secret Service agents were on duty to protect Vice President Michael R. Pence and his two immediate family members—all of whom were present at the Capitol. This

official will further testify about the Capitol breach's effect on the Secret Service's protection of Vice President Pence and his family members.

However, the nature of the Secret Service's role in protecting the Vice President and his family implicates sensitive information related to the Secret Service's ability to protect high-ranking members of the Executive branch and, by extension, national security. Thus, the government seeks an order limiting the cross-examination of the Secret Service witnesses. Specifically, the defendant should be precluded from questioning the witness(es) about the following:

1. Secret Service protocols for when emergencies occur, including those related to the locations where protectees or their motorcades are taken at the Capitol; and

2. Operational specifics about Secret Service protective details, such as the number and type of agents the Secret Service assigns to protectees.

Cross-examination of Secret Service witnesses about these extraneous matters, which will be beyond the scope of direct examination, should be excluded as irrelevant and unduly prejudicial. The Secret Service's general protocols about relocation for safety, for instance, should be excluded as irrelevant because such evidence does not tend to make a fact of consequence more or less probable. Fed. R. Evid. 401 (defining relevant evidence). Similarly, operational specifics about Secret Service protective details are not relevant in this case. The number or type of assigned agents on a protective detail does not alter the probability that the Capitol and its grounds were restricted at the time, nor that the Vice President was temporarily visiting. None of the other elements to be proven or available defenses implicate further testimony from the Secret Service.

And any relevance to this evidence is substantially outweighed by the danger of confusion of the issues, mini-trials, undue delay, and waste of time. Broader cross-examination of Secret

Service witnesses could compromise national security without adding any appreciable benefit to the determination of the truth, or the veracity or biases of witnesses.

## C. *Topic #3:* **The Court Should Preclude the Defendant from Arguing Entrapment by Estoppel or Making a Public Authority Defense**

The Court should prohibit the defendant from making arguments, introducing irrelevant evidence, or suggesting that former President Donald J. Trump or any other officials gave the defendant permission to attack the U.S. Capitol in what are commonly known as "entrapment-by-estoppel" or "public authority" defenses. She cannot point to such permission, and, even if she could, it would not constitute legal permission for her particular conduct.

As courts in this district have explained, the entrapment-by-estoppel and public authority defenses are closely related and derive from a constitutional prohibition against "convicting a citizen for exercising a privilege which the State had clearly told him was available to him." *United States v. Sheppard*, No. 21-cr-203, 2022 WL 17978837, at *7 (D.D.C. Dec. 28, 2022) (J. Bates) (quoting *Cox v. Louisiana*, 379 U.S. 559, 571 (1965)). Both defenses are narrow ones, however, and a defendant may succeed on them only if she meets rigorous evidentiary requirements. *See United States v. Alvarado*, 808 F.3d 474, 484-85 (11th Cir. 2015) ("The public authority defense is narrowly defined, however, and a defendant will not be allowed to assert the defense, or to demand that the jury be instructed on it, unless he meets certain evidentiary prerequisites."); *United States v. Baker*, 438 F.3d 749, 755 (7th Cir. 2006) ("The [entrapment-by-estoppel] defense is a narrow one."). To succeed on an entrapment-by-estoppel claim, a defendant must prove:

> (1) that a government agent actively misled him about the state of the law defining the offense;
>
> (2) that the government agent was responsible for interpreting, administering, or enforcing the law defining the offense;
>
> (3) that the defendant actually relied on the agent's misleading pronouncement in committing the offense; and

(4) that the defendant's reliance was reasonable in light of the identity of the agent, the point of law misrepresented, and the substance of the misrepresentation.

*United States v. Chrestman*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021) (C.J. Howell) (quoting *Cox*, 906 F.3d at 1191). This district has articulated a similar four-part analysis for the public authority defense:

[A]n individual (1) reasonably, on the basis of an objective standard, (2) relies on a (3) conclusion or statement of law (4) issued by an official charged with interpretation, administration, and/or enforcement responsibilities in the relevant legal field.

*Sheppard*, 2022 WL 17978837 at *8 (quoting *United States v. Barker*, 546 F.2d 940, 955 (D.C. Cir. 1976). Common between these standards is, among other things, that a government official must offer a "state" or "statement" of the law.

The defendant has not, and cannot, argue that, in urging his supporters towards the Capitol, then-President Trump made a "statement" of law. By now, several courts in this district have considered various defendants' arguments that the former President's words immunized their actions on January 6. To the government's knowledge, all these arguments have failed. *See, e.g.*, *Sheppard*, 2022 WL 17978837 at *9 (prohibiting defendant from seeking discovery or presenting evidence at trial on entrapment-by-estoppel or public authority defenses); Order at 2, ECF No. 39, *United States v. Thompson*, No. 21-cr-161 (D.D.C. Mar. 23, 2022) (J. Walton) (excluding evidence of former President Trump's statements for all purposes as unduly prejudicial under Fed. R. Evid. 403); *United States v. Grider*, No. 21-cr-022, 2022 WL 3030974, at *4 (D.D.C. Aug. 1, 2022) (J. Kollar-Kotelly) (declining to instruct jury on defense of entrapment by estoppel); *Chrestman*, 525 F.Supp.3d at 33 (noting that an entrapment-by-estoppel defense is "highly unlikely" to succeed and declining to consider it as weighing in favor of granting pre-trial release).

Defendants' efforts to assert an entrapment-by-estoppel defense have uniformly failed, given that, as Judge Bates observed, the defense is available "only when the official's statements

or conduct state or clearly imply that the defendant's actions are lawful." *Sheppard*, 2022 WL 17978837 at *9. The key challenge for the defendant is that, as other courts have observed, "President Trump neither stated nor implied that entering the restricted area of the Capitol grounds and the Capitol building or impeding the certification of the electoral vote was lawful." *Id.* Rather:

> [Trump's] speech simply suggests that it would be an act of "boldness" to "stop the steal." Thus, allowing [the defendant's] reliance on these words would be an instance of allowing "following orders, without more, [to] transform an illegal act into a legal one"—something the D.C. Circuit has unequivocally declined to do.

*Id.* (quoting *United States v. North*, 910 F.2d 843, 879 (D.C. Cir. 1990) (per curiam), *opinion withdrawn and superseded in part on reh'g*, 920 F.2d 940 (D.C. Cir. 1990)).

Similarly, Judge Kollar-Kotelly, in considering an entrapment-by-estoppel argument, noted that "former President Trump's statements did not in any way address the legality of the actions he urged his supporters to take. He did not, for example, assure them that marching along Pennsylvania was 'lawful' or that occupying Capitol grounds was 'permissible.'" *Grider*, 2022 WL 3030974 at *3. In short, then-President Trump did not mislead the defendant about the state of the law, because Trump did not make any statement about the law at all. *Id.* at 2.

Even if then-President Trump *had* made a statement about the law, allowing those statements to immunize the defendant's conduct here would raise serious constitutional concerns. As Judge Howell observed about another entrapment-by-estoppel defense by a similarly situated defendant, "No American President holds the power to sanction unlawful actions because this would make a farce of the rule of law." *Chrestman*, 525 F.Supp.3d at 32:

> [N]o President may unilaterally abrogate criminal laws duly enacted by Congress as they apply to a subgroup of his most vehement supporters. Accepting that premise, even for the limited purpose of immunizing defendant and others similarly situated from criminal liability, would require this Court to accept that the President may prospectively shield whomever he pleases from prosecution simply by advising them that their conduct is lawful, in dereliction of his constitutional obligation to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3. That proposition is beyond the constitutional pale, and thus beyond the lawful

powers of the President.

> Even more troubling than the implication that the President can waive statutory law is the suggestion that the President can sanction conduct that strikes at the very heart of the Constitution and thus immunize from criminal liability those who seek to destabilize or even topple the constitutional order. In addition to his obligation to faithfully execute the laws of the United States, including the Constitution, the President takes an oath to "preserve, protect and defend the Constitution." U.S. Const. art. II, § 1, cl. 8. He cannot, in keeping with his constitutional function and his responsibilities under Article II, lawfully permit actions that directly undermine the Constitution.

*Id.* at 32–33 (D.D.C. 2021). In other words, to allow an entrapment-by-estoppel or public authority defense based on the President's false statements of law would implicate both the Take Care clause and the presidential oath of office, and, more fundamentally, disrupt the nature of the rule of law in America.

Nor can the defendant point to statements or permission from other government actors. Although *Chrestman* involved an argument that former President Trump gave the defendant permission to enter the Capitol grounds, the reasoning in *Chrestman* applies equally to any argument that other officials or law enforcement officers gave permission to the defendant to do the same. Just as a President cannot unilaterally repeal laws, no other officials or members of law enforcement could use their authority to allow individuals to enter the Capitol building during a violent riot. As Judge Howell observed, "the logic in *Chrestman* that a U.S. President cannot unilaterally abrogate statutory law applies with equal force to government actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building." Memorandum and Order, *United States v. Williams*, No. 21-cr-377, at *2 (D.D.C. June 8, 2022).

Even if the defendant in this case could establish that an official or officer gave her permission to do what she did on January 6 (she cannot), the defendant's reliance on any such statement would not be reasonable considering the "obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Chrestman*, 525 F.Supp.3d at 32. Moreover, the

defendant's actions here contradict any argument that she relied on any such statement by law enforcement when she decided to unlawfully enter the Capitol grounds and the Capitol building itself. Indeed, video evidence shows that the defendant received ample notice that her presence on the Capitol grounds was unlawful: during a non-custodial interview with the FBI, the defendant said that while on the Capitol grounds, she was in the vicinity of a chemical irritant and recalled police shooting rubber bullets at other rioters; in an Instagram message to another user, she said she "got a bit of tear gas" and video-recorded "all the broken glass from inside" the Capitol building; and USCP surveillance shows the defendant *twice* entering the Capitol building through doors with broken windows and *twice* being forced out of the Capitol building by law enforcement. Accordingly, the defendant should be prohibited from arguing—speciously and contrary to law—that her conduct was legal because someone allegedly told her it was.[1]

D. ***Topic #4:*** **The Court Should Preclude the Defendant from Arguing that Alleged Inaction by Law Enforcement Officers Made Her Conduct on January 6 Legal**

In addition to prohibiting arguments that any officials or officers permitted the defendant to enter the Capitol grounds, the Court should bar the defendant from arguing that any failure of law enforcement to act rendered the defendant's conduct legal. The same reasoning that applied in *Chrestman* again applies here. That is, like the President, a law enforcement officer cannot "unilaterally abrogate criminal laws duly enacted by Congress" through his or her purported inaction. *Chrestman*, 525 F.Supp.3d at 33. An officer cannot shield an individual from liability for an illegal act by failing to enforce the law, nor can an officer ratify unlawful conduct by failing to prevent it.

---

[1] Regardless, "entrapment by estoppel is a defense rather than an evidentiary objection and, accordingly, should have been raised prior to trial." *United States v. Colon Ledee*, 967 F. Supp. 2d 516, 520 (D.P.R. 2013). Having raised no such defense in pre-trial filings, and for the reasons discussed above, the defendant should be precluded from raising these defenses at trial.

"Settled caselaw makes clear that law officer inaction—whatever the reason for the inaction—cannot sanction unlawful conduct." *Williams*, No. 21-cr-377 at *3; s*ee also Garcia v. Does*, 779 F.3d 84, 95 (2d Cir. 2015) (en banc) (entrapment-by-estoppel defense rejected after defendants argued that their prosecuted conduct had been implicitly approved by the police but could not show that it was "affirmatively authorized" by the police). The same principles apply here. The defendant should be prohibited from arguing that her conduct was lawful because law enforcement officers allegedly failed to prevent it or respond directly to it when it occurred.

The government acknowledges that the conduct of law enforcement officers may be relevant to the defendant's state of mind on January 6, 2021. However, unless she was aware of law enforcement's alleged inaction at the time of her entry onto restricted grounds or into the Capitol building, any alleged inaction would have no bearing on the defendants' state of mind and therefore would not meet the threshold for relevance. Fed. R. Evid. 401 (Evidence is relevant if it "has any tendency to make a fact more or less probable").

The court granted a similar request from the government to preclude such evidence in *Williams*, No. 21-cr-377, ECF No. 87 3-4. There, Chief Judge Howell acknowledged that, "As a logical matter, however, any action or inaction of which defendant was not aware cannot possibly have had any effect on his state-of-mind and is inadmissible as irrelevant under Federal Rule of Evidence 401." *Id.* at p.3. The government respectfully requests the Court reach the same conclusion in this case and exclude testimony and evidence of any alleged inaction by the police as irrelevant, except to the extent the defendants observed or were aware of the alleged inaction by the police when they committed the charged offenses.

E.   *Topic #5:* **The Court Should Preclude the Defendant from Arguing that Her Conduct Was Protected by the First Amendment**

The Court should preclude the defendant from arguing or eliciting evidence that on January 6, she enjoyed a First Amendment right to protest inside the restricted area around the Capitol or inside the Capitol building itself.

At trial, the government will show that the Capitol grounds and building were restricted on January 6 within the meaning of 18 U.S.C. § 1752(c)(1)(B) (defining a "restricted building or grounds" as "any posted, cordoned off, or otherwise restricted area . . . of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting").  As the Court discussed in its order denying the defendant's motion to dismiss (ECF No. 43), there is no First Amendment right to protest in a restricted area. The government can— and on January 6, did—restrict an area that is a traditional public forum for legitimate government ends. Courts in this district have repeatedly affirmed that the government may close a public forum in similar circumstances. *See, e.g.*, *Mahoney v. United States Marshals Service*, 454 F. Supp. 2d 21, 32-33 (D.D.C. 2006) (U.S. Marshals Service did not violate the First Amendment by restricting access to a sidewalk in front of St. Matthew's Cathedral for Red Mass, even though the sidewalk was a traditional public forum). Unsurprisingly, other courts have similarly upheld temporary closures of traditional public forums for safety reasons. *See Menotti v. City of Seattle*, 409 F.3d 1113, 1129-30 (9th Cir. 2005) (finding that an emergency order closing a core area of downtown Seattle to protests during World Trade Organization conference was constitutional in part because its purpose was to maintain and restore civic order); *Marcavage v. City of New York*, 489 F.3d 98, 105 (2d Cir. 2012) ("[T]here can be no doubting the substantial government interest in the maintenance of security at political conventions"); *Citizens for Peace in Space v. City of Colorado Springs*, 477 F.3d 1212, 1222 (10th Cir. 2007) ("In this case, there can be no doubt that the City's

interest in providing security to a gathering of defense officials is of the highest order"); *Bl(a)ck Tea Society v. City of Boston*, 378 F.3d 8, 11 (1st Cir. 2004) (upholding a street-closure plan around the Democratic National Convention that made it nearly impossible for groups wishing to demonstrate to do so within sight and sound of the delegates).

On January 6, the USCP and the Secret Service coordinated to establish a restricted perimeter around the Capitol building that encompassed a portion of the Capitol grounds. Although the defendant may attempt to suggest otherwise, no member of the public, including the defendant, had a First Amendment right to engage in protest or speech within that restricted area. The Court should preclude the defendant from eliciting testimony to the contrary or arguing that she was engaged in protected speech or pursuing her "right" to protest when she was on the Capitol grounds.

**F.**    ***Topic #6:*** **The Court Should Preclude the Defendant from Encouraging Jury Nullification**

The Court should prohibit the defendant from arguing or introducing evidence that encourages jury nullification, whether during *voir dire* or at trial.  As the D.C. Circuit has made clear:

> A jury has no more "right" to find a "guilty" defendant "not guilty" than it has to find a "not guilty" defendant "guilty," and the fact that the former cannot be corrected by a court, while the latter can be, does not create a right out of the power to misapply the law. Such verdicts are lawless, a denial of due process and constitute an exercise of erroneously seized power.

*United States v. Washington*, 705 F.2d 489, 494 (D.C. Cir. 1983).  Evidence that only serves to support a jury nullification argument or verdict has no relevance to guilt or innocence. *See United States v. Gorham*, 523 F.2d 1088, 1097-98 (D.C. Cir. 1975); *see also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("No reversible error is committed when evidence, otherwise

inadmissible under Rule 402 of the Federal Rules of Evidence, is excluded, even if the evidence might have encouraged the jury to disregard the law and to acquit the defendant").

The government has identified the following subject areas that are not relevant to the issues before the jury and that could serve as an improper invitation for the jury—or this Court—to nullify its fact-finding and conclusions under the law. The Court should preclude any reference to these issues, or similar arguments, either during *voir dire*, opening statement, questioning of witnesses, the defense case-in-chief, or closing.

### 1. Selective Prosecution

The defendant may claim that she has been unfairly singled out for prosecution because of her political views. But a "selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Regardless of whether alleged discrimination based on political views is a proper basis for challenging the indictment—which the defendant has not claimed to date—it has no place in a trial. *See United States v. King*, No. 08-cr-002, 2009 WL 1045885, at *3 (D. Idaho Apr. 17, 2009) ("The Court will therefore exclude any evidence or argument as to selective prosecution at trial."); *United States v. Kott*, No. 3:07-cr-056, 2007 WL 2670028, at *1 (D. Alaska Sept. 10, 2007) (precluding the defendant from educing evidence to support a selective prosecution claim at trial). Rather, such an argument could serve as an improper invitation for the jury or Court to nullify its fact-finding and conclusions under the law. The defendant should therefore be precluded from making it.

### 2. Statements Regarding the Potential Punishment or Collateral Consequences of Conviction

The defendant could face a prison sentence if she is found guilty in this case, and she should not be permitted to seek to arouse the jury's sympathy by introducing any evidence of or attempting to argue about the hardships of prison or the potential effect of incarceration on her family or employment prospects.

It is settled law that the jury should not consider potential penalties in reaching its verdict. *See, e.g.*, *United States v. Reed*, 726 F.2d 570, 579 (9th Cir. 1984) (a defendant's possible sentence "should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused."); *Rogers v. United States*, 422 U.S. 35, 40 (1975) (jury should have been admonished that it "had no sentencing function and should reach its verdict without regard to what sentence might be imposed"). Indeed, courts in this district often give a jury instruction stating exactly that:

> The question of possible punishment of the defendant in the event a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

D.C. Redbook 2.505. Thus, the above-mentioned issues are irrelevant—any reference to them would improperly invite jury nullification. *See United States v. Bell*, 506 F.2d 207, 226 (D.C. Cir. 1974) ("evidence which has the effect of inspiring sympathy for the defendant or for the victim . . . is prejudicial and inadmissible when otherwise irrelevant") (internal citation omitted); *United States v. White*, 225 F. Supp. 514, 519 (D.D.C 1963) ("The proffered testimony (which was clearly designed solely to arouse sympathy for defendant) was thus properly excluded."). As such, they should be excluded.

G.    *Topic #7:* **The Court Should Preclude the Defendant from Arguing Self-Defense or Defense of Others**

The defendant has not formally raised claims of self-defense, but if she does, such arguments should be precluded.  To establish a prima facie case of self-defense, the defendant must make an offer of proof of "(1) a reasonable belief that the use of force was necessary to defend himself or another against the immediate use of unlawful force and (2) the use of no more force than was reasonably necessary in the circumstances." *United States v. Biggs*, 441 F.3d 1069, 1071 (9th Cir. 2006). "If a defendant cannot proffer legally sufficient evidence of each element of an affirmative defense, then he is not entitled to present evidence in support of that defense at trial." *United States v. Cramer*, 532 Fed. Appx. 789, 791 (9th Cir. 2013) (citing *United States v. Bailey*, 444 U.S. 394, 415 (1980)).

The defendant is charged with various offenses for trespassing onto the Capitol grounds, acting disorderly or disruptive, and unlawfully entering the Capitol building itself. None of these actions can be explained by a desire to defend herself or others. Allowing such defenses would confuse the issues, mislead the jury and result in undue delay and wasted time. Fed. R. Evid. 403. These arguments ought to be excluded.

H.    *Topic #8:* **The Court Should Preclude the Defendant from Introducing Evidence of Her Own Good Conduct or Comparing Her Culpability Relative to Other Rioters**

The defendant twice illegally entered the U.S. Capitol through a broken door on January 6, 2021.  She is charged accordingly. She did not, however, injure anyone, steal property, or vandalize anything. The Court should preclude any argument that the defendant's lack of additional criminal actions on January 6, 2021, or allegedly helpful acts negate the criminal conduct for which she is charged.  *See United States v. Camejo*, 929 F.2d 610, 612-13 (11th Cir. 1991) (a witness's proffered testimony that a defendant declined to participate in a separate,

contemporaneous narcotics conspiracy was an inadmissible "attempt to portray [the defendant] as a good character through the use of prior 'good acts'"). Indeed, such evidence would not be particularly probative of whether the defendant is guilty of the offenses with which she is charged.

Evidence of past "good acts" by a defendant is generally not probative unless a defendant is alleged to have always or continuously committed bad acts or engaged in ceaseless criminal conduct. *United States v. Damti*, 109 Fed. Appx. 454, 455-56 (2nd Cir. 2004) (citations omitted). Ceaseless conduct occurs when it is alleged that all the defendant's actions were illegal. *Id*. When that is not alleged and the prosecution can point to specific criminal acts, then evidence of good acts is not probative of the issue of guilt at trial. *Id*. Using specific instances of good acts "to prove lack of intent . . . is not only disfavored, it is not permitted under Rule 405(b)." *United States v. Marrero*, 904 F.2d 251, 259–60 (5th Cir. 1990) (affirming decision to exclude evidence that the defendant "provided more services to some clients than they were actually billed for and that sometimes she rendered services free of charge," which the defendant sought to introduce to show that she did not intend to improperly bill a government agency for medical services).

Even if probative, however, introducing evidence about the defendant's irrelevant conduct risks confusing the issues by inviting the jury or Court to weigh the defendant's culpability relative to other rioters, and ought to be excluded. *See United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001) ("Evidence that is admissible under Rule 404 may nonetheless be excluded under Rule 403 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'"). Any alleged specific good acts by the defendant are not connected to the issues of this case. Introducing evidence of such acts carries an unnecessary risk of distracting the jury by allowing it to decide based, not on whether

the evidence showed that the defendant committed the charged crimes, but instead on whether the defendant performed unrelated good deeds.

## I. Topic #9: The Court Should Preclude Improper Defense Arguments and Evidence Pertaining to the Actions of Other Rioters or their Charges and Case Dispositions

The government requests that the Court exclude any evidence or argument pertaining to charges or dispositions in other January 6 cases. Such evidence or argument, which would implicate procedural events occurring after January 6, has no bearing on the proof of the defendants' alleged criminal conduct that day. In addition, any such evidence or argument would divert the jury's attention to other defendants and criminal allegations rather than the conduct of these defendants. Because this would confuse the issues, mislead the jury, cause undue delay, and waste time, Rule 403 independently supports exclusion. At most, "disparate charging decisions in similar circumstances may be relevant at sentencing." *See United States v. Griffin*, 549 F. Supp. 3d 49, 59 (D.D.C. 2021). But, as the D.C. Circuit recognized in *Washington*, 705 F.2d 489, it has no bearing on the jury's determination of defendants' guilt or innocence on the underlying charges.

## III. CONCLUSION

For the reasons described above, the United States respectfully requests that this Court grant the government's omnibus motion *in limine* in its entirety.

Respectfully submitted,

DATED: August 1, 2023

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: */s/ Madison H. Mumma*
Madison H. Mumma
Trial Attorney
N.C. Bar No. 56546
601 D St., NW
Washington, D.C. 20001
madison.mumma2@usdoj.gov

(202) 431-8603

*/s/ Troy A. Edwards, Jr.*
Troy A. Edwards, Jr.
Assistant United States Attorney
N.Y Bar No. 5453741
601 D St., NW
Washington, D.C. 20001
troy.edwards@usdoj.gov
(202) 252-7081

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Case No. 1:21-CR-507 (PLF)** |
| | : | |
| **STEPHANIE BAEZ,** | : | |
| | : | |
| **Defendant.** | : | |

## <u>ORDER</u>

This matter having come before the Court pursuant to the Government's motion seeking to preclude certain defense arguments, filed on August 1, 2023, is hereby:

**ORDERED** that the Government's Motion is **GRANTED.** Specifically, the defendant is precluded from introducing evidence or making arguments:

(1) On the specific location of security cameras in the U.S. Capitol;

(2) On specific Secret Service tactics and emergency operations;

(3) That her conduct was authorized by former President Trump or other officers or officials;

(4) That any inaction by law enforcement made her conduct legal;

(5) That the First Amendment permitted her conduct;

(6) Encouraging jury nullification;

(7) That she defended herself or others on January 6, 2021;

(8) On her prior good acts, or culpability relative to other actors on January 6, 2021; and

(9) On the actions of other rioters or their charges and dispositions.

_____
HONORABLE PAUL L. FRIEDMAN
United States District Judge