UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 23-288-2 (BAH) |
| JEANETTE MANGIA, | Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM AND ORDER**

The United States government moves to dismiss, with prejudice, the eleven-count Indictment, ECF No. 16, against defendant Jeanette Mangia. Gov't's Mot. to Dismiss Indictment with Prejudice Pursuant to Federal Rule Criminal Procedure 48(a) ("Gov't's MTD"), ECF No. 130. While this defendant did not plead guilty, her co-defendant described, under oath, the actions he took in anticipation of and on January 6, 2021, together with the instant defendant, including preparing for potential violence in the weeks before traveling to Washington, D.C., on January 6, 2021, *see* Statement of Offense of Joseph Pastucci providing "factual basis for the defendant's guilty plea" ("Pastucci SOF") Introduction & ¶¶ 8, 11, 13, ECF No. 115; sharing information about how the certification of the Electoral College vote could be thwarted, *see id.* ¶ 10; breaching the Capitol two separate times and roaming throughout the building, including entering the Speaker of the House's personal office and the Senate floor, *see id.* ¶¶ 20-29; and physically assaulting law enforcement officers who were removing them from the Capitol building, *id.* at 28. These actions were motivated by the belief that the 2020 presidential election had been "stolen," *id.* ¶ 8; *see also, e.g.*, ¶ 10, despite the fact that no evidence of any outcome-determinative election fraud has ever been uncovered, let alone confirmed, by any federal, state, or local government agency or in any court of law.

1

Notwithstanding the strength of the evidence against this defendant, for the reasons explained below, the government's motion is granted in part and denied in part, and the pending indictment against defendant is dismissed without prejudice.

## I. BACKGROUND

As alleged by the government, admitted under oath by this defendant's co-defendant who accompanied her on January 6, 2021, and supported by voluminous evidence put forward by the government, *see, e.g.*, Gov't's Ex. List, ECF No. 46 (submitted in advance of co-defendant's stipulated bench trial), this defendant planned to travel to Washington, D.C., on January 6, 2021, for a month in advance of that date, *see* Pastucci SOF ¶ 8. In preparation, defendant planned with her co-defendant in terms that anticipated violence, including considering purchasing chemical irritants such as pepper spray, red pepper gel, and bear spray, *id.* ¶ 9; searching Amazon.com for a "flamethrower," *id.* ¶ 11; and discussing bringing guns when traveling to D.C., *id.* ¶ 13.

On January 6, 2021, defendant and her co-defendant drove to D.C. and attended the "Stop the Steal" rally held by President Trump at the Ellipse, *id.* ¶¶ 15, 17, after which they joined the crowd walking to the Capitol, *see id.* ¶¶ 15, 18-19. Defendant entered the Capitol Building through the Senate Wing Door only two minutes after the door had been breached for the first time, *see id.* ¶ 20—the first of two separate unauthorized entrances into the building. While inside the Capitol, defendant yelled at law enforcement officers through a bullhorn, *id.* ¶ 21; roamed throughout the building, *see id.* ¶¶ 15, 21-29; entered the Speaker of the House's office and took pictures posing there, *id.* ¶ 23; entered the Senate chamber and, for approximately 12 minutes, remained on the Senate floor, where defendant reviewed and handled documents taken from the desks of United States Senators, *id.* ¶ 27; and engaged in a physical confrontation with law enforcement officers, who instructed her to leave the building, which confrontation ended with defendant being

physically carried out of the building and physically assaulting one of the officers who carried her, *id.* ¶ 28. Even after being physically removed from the building, defendant then reentered the building a second time and was one of the final rioters to enter the Capitol Rotunda before the doors were secured, *id.* ¶ 29.

## II.   DISCUSSION

Courts have limited power when the federal government decides to stop prosecuting a criminal defendant. *See, e.g.*, *Wayte v. United States*, 470 U.S. 598, 607-08 (1985) (recognizing the government's broad prosecutorial discretion); *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016) (recognizing same prosecutorial discretion in "decisions to dismiss pending criminal charges"). At the same time, the Supreme Court and D.C. Circuit have both recognized that the "leave of court" requirement in Rule 48(a) "obviously vest[s] some discretion in the court." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977); *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) (noting that this rule "gives the court a role in dismissals following indictment"). This discretion is granted in part to "guard[] against abuse of prosecutorial discretion." *Ammidown*, 497 F.2d at 620. To ensure that the government's request for dismissal of criminal charges "sufficiently protects the public," the government may be required to submit "a statement of reasons and underlying factual basis," which must be "substantial" to justify the dismissal and not "a mere conclusory statement." *Id.*

Here, the government's cursory motion provides *no* factual basis for dismissal. Instead, the single paragraph explanation included in the one-page dismissal motion cites "as the reason for this dismissal," only a presidential proclamation "dated January 20, 2025, Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at Or Near the United States Capitol on January 6, 2021." Gov't MTD at 1. This cited proclamation, *inter alia*, directs

3

the Attorney General "to pursue [the] dismissal with prejudice to the government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." *See* PROCLAMATION, (Jan. 20, 2025) (capitalization in original), available at https://www.whitehouse.gov/presidential-actions/2025/01/granting-pardons-and-commutation-of-sentences-for-certain-offenses-relating-to-the-events-at-or-near-the-united-states-capitol-on-january-6-2021/. The only reason provided for this instruction, as set out in the proclamation's introduction, is the assertion that this action "ends a grave national injustice that has been perpetrated upon the American people over the last four years and begins a process of national reconciliation." *Id.*

No "national injustice" occurred here, just as no outcome-determinative election fraud occurred in the 2020 presidential election. No "process of national reconciliation" can begin when sore losers, whose preferred candidate loses an election, are glorified for disrupting a constitutionally mandated proceeding in Congress and doing so with impunity. That merely raises the dangerous specter of future lawless conduct by other sore losers and undermines the rule of law. Yet, this presidential pronouncement of a "national injustice" is the sole justification provided in the government's motion to dismiss the pending indictment. *See* Gov't's MTD.

Having presided over scores of criminal cases charging defendants for their criminal conduct both outside and inside the U.S. Capitol Building on January 6, 2021, which charges were fully supported by evidence in the form of extensive videotapes and photographs, admissions by defendants in the course of plea hearings and in testimony at trials, and the testimony of law enforcement officers and congressional staff present at the Capitol on that day, this Court cannot let stand the revisionist myth relayed in this presidential pronouncement. The prosecutions in this case and others charging defendants for their criminal conduct at the U.S. Capitol on January 6,

2021, present no injustice, but instead reflect the diligent work of conscientious public servants, including prosecutors and law enforcement officials, and dedicated defense attorneys, to defend our democracy and rights and preserve our long tradition of peaceful transfers of power—which, until January 6, 2021, served as a model to the world—all while affording those charged every protection guaranteed by our Constitution and the criminal justice system.  Bluntly put, the assertion offered in the presidential pronouncement for the pending motion to dismiss is flatly wrong.

Still, the D.C. Circuit has cautioned that a district court judge has "no power" "to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority."  *Fokker*, 818 F.3d at 742; *id.* at 737 ("It has long been settled that the Judiciary generally lacks authority to second-guess those Executive determinations, much less to impose its own charging preferences.").  Despite finding that the sole reason relied upon by the government to dismiss the charges in this case—*i.e.*, an incorrect assertion in the presidential proclamation—is neither substantial nor factually correct, the government's view of the public interest does not clearly fall within the types of reasons found to provide legitimate grounds to deny the government's Rule 48(a) motion to dismiss charges.  *See United States v. Flynn*, 507 F. Supp. 3d 116, 130-31 (D.D.C. 2020) (collecting examples where a government motion to dismiss should be denied as not serving "legitimate prosecutorial interests," because the motion "was a sham or deception," "was based on 'acceptance of a bribe, personal dislike of the victim, and dissatisfaction with the jury impaneled,'" or was meant to favor "politically well-connected individuals" (citations omitted)).  Therefore, the government's motion to dismiss the indictment is GRANTED.

Nothing about the government's reasoning for dismissal warrants entry of dismissal with prejudice, however.  Dismissal with prejudice is a complete adjudication of the matter and would bar any further prosecution of defendants for their offense conduct at issue.  *See Brown v. Amtrak Corp.*, No. 03-7003, 2003 WL 22433755, at *1 (D.C. Cir. Oct. 27, 2023) ("A dismissal 'with prejudice' is a final judgment on the merits which bars further litigation between the same parties." (citing *Bd. of Trs. of the Hotel & Rest. Emps. Local 25 v. Madison Hotel, Inc.*, 97 F.3d 1479, 1489 n.20 (D.C. Cir. 1996))); *Reed v. Farley*, 512 U.S. 339, 368 (1994) (Blackmun, J., dissenting) ("The dismissal with prejudice of criminal charges is a remedy rarely seen in criminal law, even for constitutional violations.").  This result would be improper here, where the evidence against defendant provides ample basis for criminal prosecution.  *See also Thorp v. District of Columbia*, 142 F. Supp. 3d 132, 145 (D.D.C. 2015) (noting that dismissal with prejudice "reflect[s] on the merits of the underlying action" (quoting *Brown v. Carr*, 503 A.2d 1241, 1245 (D.C. Cir. 1986), and citing *Kenley v. District of Columbia*, 83 F. Supp. 3d 20, 42 (D.D.C. 2015)).  Instead, the government's reliance on a policy assertion made in the presidential proclamation that such prosecutions should not be continued warrants only "render[ing] the proceedings a nullity and leav[ing] the parties as if the action had never been brought," *Magliore v. Brooks*, 844 F. Supp. 2d 38, 46 (D.D.C. 2012) (quoting *Thoubboron*, 809 A.2d at 1210), which is achieved by granting the government's motion to dismiss *without* prejudice, *see id.*

### III.    CONCLUSION AND ORDER

For the reasons above, the government's motion to dismiss, ECF No. 130, is granted to the extent that the Indictment, ECF No. 16, against defendant is dismissed, but denied as to the request that this dismissal be "with prejudice."  Accordingly, it is hereby—

**ORDERED** that the Indictment against defendant, ECF No. 16, is dismissed without prejudice; it is further

**ORDERED** that the status conference scheduled for January 24, 2025, is **VACATED**; it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

Date:  January 22, 2025

_____
**BERYL A. HOWELL**
United States District Judge